**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| GOMIAN KONNEH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>URBAN ONE, INC.,<br><br>Defendant. | Case No. 8:25-cv-01460-PX |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

Pursuant to Fed. R. Civ. P. 23, Plaintiff[1] respectfully submits this Motion for Final Approval of Class Action Settlement, supported by the Declaration of Lisa Pavlik of Simpluris, Inc. Regarding Implementation and Adequacy of Notice Program ("Admin. Decl."), attached as ***Exhibit A***.

## I. INTRODUCTION

On April 30, 2026, this Court preliminarily approved the Settlement between Plaintiff and Defendant resolving all disputes arising from the Data Incident. *See* ECF No. 26. The Agreement provides for substantial Settlement Class Member Benefits for 15,293 individuals, including a non-reversionary, all-cash $675,000.00 Settlement Fund, from which Settlement Class Members may elect to receive Cash Compensation and/or Credit Monitoring. Agreement ¶¶ 48(a)-(e).

Plaintiff and Class Counsel now move the Court for Final Approval of the Settlement. The

---

[1] All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement, filed on December 8, 2025 (ECF No. 20-1).

Settlement satisfies all Final Approval criteria. As of the filing of this Motion, there are zero objections and no Settlement Class Members have opted-out. Admin. Decl. ¶¶ 20, 22. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions, and believe the Settlement fairly resolves their differences. The Court should grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees, Costs, and Service Award (Dkts. 30-32).

## II. INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiff refers this Court to and hereby incorporate Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. 20) and its accompanying exhibits.

## III. SUMMARY OF THE SETTLEMENT

Plaintiff seeks Final Approval for the Settlement Class defined as "all individuals residing in the United States whose Personal Information was potentially compromised in the Data Incident discovered by Defendant in March 2025, including all those individuals who received notice of the Data Incident." Agreement ¶ 35. Excluded from the Settlement Class are the judges presiding over this Action, and members of their direct families; Defendant; and Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id*.

### A. Settlement Consideration

The Settlement's non-reversionary all-cash $675,000.00 Settlement Fund will be the total sum paid by Defendant to settle this Action and will be used to pay: (i) any and all costs of the Settlement Administrator and administration of the Settlement Fund including without limitation the CAFA Notice, Notices to the Settlement Class, Taxes and Tax-Related Expenses; (ii) all

approved Claims for Documented Losses, Lost Time, Alternative Cash Payment, and Credit Monitoring; (iii) Service Awards; and (iv) Attorneys' Fee Award and Costs. Agreement ¶ 46.

1. *Reimbursement for Documented Losses*

The first category of benefits allows Settlement Class Members who submit a valid claim to collect up to $10,000.00 per Settlement Class Member in compensation for documented identity theft and associated losses caused by the Data Incident.

2. *Reimbursement for Lost Time*

Settlement Class Members can make claims for Lost Time benefits as follows: $25 per hour for up to four hours, supported by an attestation that the activities were related to the Data Incident, and an additional $25 per hour for up to eleven hours with supporting documentation showing tax-related issues (up to $375 total). Claims for lost time are included within and subject to the $10,000 cap for Documented Losses.

3. *Alternative Cash Payment*

As an alternative to claims for Documented Losses and Lost Time above, a Settlement Class Member may elect to receive an alternative cash payment, which will be a *pro rata* share of the Net Settlement Fund remaining after Documented Losses, Lost Time, and Credit Monitoring are deducted from the Net Settlement Fund.

4. *Credit Monitoring*

Settlement Class Members can elect to enroll in Cyex Financial Shield, which offers three years of three-bureau monitoring with up to $1,000,000 in identity theft insurance.

5. *Releases*

The release in this case is tailored to the claims that have been pled or could have been pled relating to the specific Data Incident. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Defendant, related to the Data Incident.

## IV. NOTICE PROGRAM, CLAIMS, OPT-OUTS, AND OBJECTIONS

### A. The Notice Program Satisfies Rule 23 and Due Process

The Settlement Administrator implemented the Notice Program. *See generally* Admin. Decl.; Dkts. 33, 34. Postcard Notices were sent to all Settlement Class Members for whom a physical address was known by the Defendant. Admin Decl. ¶¶ 9, 13, Exs. B, C. Indeed, after additional contact information was discovered for additional Class Members, notice was sent to 2,294 additional Class Members. Dkts. 33, 34. A Long Form Notice with greater detail is also available on the Settlement Website or by mail upon request by a Settlement Class Member. Admin. Decl. ¶ 16. Postcard Notices returned as undeliverable were re-mailed to any new addresses that were found using a reasonable address trace service. *Id.* ¶¶ 11, 14. As of September 9, 2026, direct individual notice efforts have reached approximately 94.83% of the Settlement Class members. *Id.* ¶ 15.

The Postcard Notice clearly and concisely summarized the Settlement and the Settlement Class Members' legal rights, and directed them to the Settlement Website for additional information, including the Long Form Notice and Settlement Agreement and how to submit a Claim. *Id*. Exs. B, C.

The Settlement Administrator established a dedicated Settlement Website for Settlement Class Members to obtain detailed information about the Action, review important documents and relevant dates, and obtain contact information for the Settlement Administrator. *Id.* ¶ 16. As of September 8, 2026, there have been 5,757 unique visits to the Settlement Website. *Id*. The Settlement Administrator also established a toll-free telephone line for the Settlement Class to call with Settlement-related inquiries and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries. *Id.* ¶ 17.

The Notice Program provided was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The Notice conveyed the required information to the Settlement Class, allowing reasonable time for those interested in making an appearance to do so. To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Accordingly, a settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Id*.

Here, the Notice adequately informed Settlement Class Members of the nature of the Action, the Settlement Class definition, the claims at issue, the Settlement Class Member's rights to object or opt-out, and/or enter an appearance through an attorney, and the binding effect of Final Approval and class judgment. *See* Admin. Decl., Exs. B, C, D; Dkts. 33, 34. The Notice utilized clear and concise language that is easy to understand. Moreover, the Settlement Administrator—with the assistance of the Parties—took all necessary measures to ensure Notice reached as many of the Settlement Class Members as possible. Indeed, the Settlement Administrator estimates that direct notice reached 94.83% of the Settlement Class. *Id.* ¶ 15. Such notice complies with the program approved by this Court in its Preliminary Approval Order, meets due process considerations, and weighs in favor of Final Approval.

### B. Claims, Opt-Outs, and Objections

The Claims Process was structured to give all Settlement Class Members adequate time to review the Settlement terms, submit their Claims, and decide whether to opt-out of or object to the

Settlement. After additional Settlement Class Member information was identified, the parties moved the Court to provide more time for all Settlement Class Members to opt-out, object, and submit claims. Dkt. 33. The opt-out and objection deadline is September 12, 2026, and the Claims Form Deadline is October 12, 2026. Dkt. 34. As of September 9, 2026, the Settlement Administrator has received 867 Claim Forms, zero opt-out requests, and no objections. Admin. Decl. ¶¶ 18, 20, 22. Class Counsel anticipate that the Claims number will continue to increase until the Claims Form Deadline. Claim Forms are still subject to final audits, including a full assessment of each Claim's validity and a review for duplicate submissions. *Id.* ¶ 18. Class Counsel will update the Court with the final opt-out and objection numbers and with updated claims numbers at the Final Approval Hearing, including responding to an objection, if any is filed.

## V. SETTLEMENT CLASS CERTIFICATION

The Court granted Preliminary Approval on April 30, 2026, Dkt. 26, and amended the objection, opt-out, and claims deadlines on July 13, 2026, Dkt. 34. In the Court's Preliminary Approval Order, the Court, for settlement purposes only, preliminarily certified the Action as a class action for the Settlement Class, finding prerequisites of numerosity, commonality, typicality, adequacy, predominance, and superiority were satisfied pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and that the Settlement Class should be certified pursuant to Fed. R. Civ. P. 23(b)(2). The Court appointed Plaintiff as Class Representative pursuant to Fed. R. Civ. P. 23(e)(2)(A), and Brittany Resch of Strauss Borrelli PLLC as Class Counsel. The Court also appointed Simpluris as the Settlement Administrator and approved the Notices and Claim Form. Because nothing has changed regarding class certification, the Court should finally certify the Settlement Class. For efficiency, Plaintiff incorporates by reference her Settlement Class certification arguments from the Motion for Preliminary Approval. ECF No. 20 at 9–15.

## VI. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

### A. Legal Standard for Final Approval

Plaintiff brings this motion pursuant to Federal Rule of Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Fed. R. Civ. P. 23(e). "Federal Rule 23(e) has been applied and analyzed thoroughly in reported decisions of Maryland's federal district courts and the Fourth Circuit, as well as nationally." *Shenker v. Polage*, 130 A.3d 1171, 1178-79, 226 Md. App. 670, 683 (Md. Ct. Spec. App. 2016) (citing *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015)); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991); *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975); *In re Mid–Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983); *In re Montgomery Cnty. Real Estate Antitrust Litig.*, 83 F.R.D. 305 (D. Md. Jun. 8, 1979).

The Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. *See* Fed. R. Civ. P. 23(e)(2); *Manual for Complex Litigation* (Fourth), § 21.632 (4th ed. 2004). The approval process involves two steps. At the first, or preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval" and warrants notice being issued to the class. *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. May 6, 1994) (citing *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. at 1384). This first step involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.*; *Manual for Complex Litigation*, § 30.41 (3d ed. 1995). It is only after a court has preliminarily approved a settlement, and notice has been provided to the Class, that the court makes a final determination of the fairness, adequacy, and reasonableness of a Settlement.

The primary concern for a court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re*

*Jiffy Lube Sec. Litig.*, 927 F.2d at 158-59. Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. July 10, 2001). However, "there is a strong initial presumption that the compromise is fair and reasonable." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. Aug. 20, 1991).

Moreover, as the Fourth Circuit has recognized, courts strongly favor and encourage settlements. *See, e.g., United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). "This is particularly true in class actions" and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Six v. Loancare, LLC*, No. 5:21-cv-00451, 2022 WL 16747291, at *3 (S.D. W. Va. Nov. 7, 2022) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) and citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in factor of settlements, particularly in the class action context")).

The Court preliminarily approved the Settlement and the Notice Program on April 30, 2026. Dkt. 26. After additional Class Member information was identified, Dkt. 33, the Court again approved the modified Notice Program. Dkt. 34. Notice has now been sent to the Settlement Class and the Settlement has been well received. Plaintiff requests that this Court finally certify the Action, finally approve the Settlement, grant Plaintiff's Application for Attorneys' Fees, Costs, and Service Award (Dkt. 30), dismiss the Action with prejudice, and enter the Final Approval Order submitted with this motion. The proposed Settlement is fair, adequate, and reasonable. With Final Approval, Plaintiff and Settlement Class Members may begin to appreciate the monetary and non-

monetary benefits of the Settlement.

**B. The Settlement Should be Finally Certified for Settlement Purposes.**

As Plaintiff set forth at length in her Motion for Preliminary Approval, the proposed Settlement Class satisfies all of the requirements of Rule 23. *See* Fed. R. Civ. P. 23(a), (b)(3). The Court preliminarily certified the Settlement Class in its Preliminary Approval Order and nothing has occurred that would change the Court's previous determination that Plaintiff satisfies the requirements under Rule 23. Specifically, the Settlement Class still meets the requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority under Rules 23(a) and (b)(3). *Id*. Thus, the Court should finally certify the Settlement Class for settlement purposes.

**C. The Settlement is Fair, Reasonable, and Adequate and Should Be Approved.**

The Fourth Circuit has developed a two-part analysis in *Jiffy Lube* to determine whether to grant final approval of a class action settlement: (1) adequacy—whether the class recovery is adequate in comparison to what the class gives up; and (2) fairness—whether the procedure by which the settlement was negotiated was proper.[2] *See In re Jiffy Lube*, 927 F.2d at 159; *Clark v. Experian Info. Sols., Inc*., No. 8:00-1217-22, 2004 WL 256433, at *5 (D.S.C. Jan. 14, 2004), *decision clarified* (Feb. 9, 2004).

1. <u>The Settlement Terms Meet the *Jiffy Lube* Adequacy Requirement.</u>

[2] "In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement." *Skochin v. Genworth Fin., Inc.*, No. 3:19-cv-49, 2020 WL 6697418, at *2 (E.D. Va. Nov. 12, 2020); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) ("[B]ecause our factors for assessing class action settlement almost completely overlap with the new Rule 23(e)(2) factors, the outcome … would be the same under both our factors and the Rule's factors."); *see also Yost v. Elon Prop. Mgmt. Co. Lexford Pools 1/3, LLC*, No. ELH-21-1520, 2023 WL 185178, at *4 (D. Md. Jan. 13, 2023) (same) (granting final approval after evaluating adequacy and fairness of settlement under *Jiffy Lube* factors).

In analyzing the adequacy of a proposed settlement, the Court should consider the *Jiffy Lube* factors: (1) the relative strength of the case on the merits; (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the probability of recovery on a litigated judgment; and (5) and the degree of opposition to the proposed settlement. *See In re Jiffy Lube*, 927 F.2d at 159; *Clark*, 2004 WL 256433, at *5.

*a. The Relative Strength of the Case on the Merits, the Risks of the Case If the Case Were to Go to Trial, and the Duration and Expense of Additional Litigation Weigh in Favor of Final Approval.*

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. *See S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. July 25, 1990) (noting that settlement spares litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources). Here, the first three *Jiffy Lube* factors are closely related, and weigh in favor of Final Approval of the proposed settlement.

The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiff believes her case is strong, there would be substantial risk in litigating the case. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part and remanded*, 999 F.3d 1247 (11th Cir. 2021) (recognizing the complexity and novelty of issues in data breach class actions); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex.") ("This field of litigation is evolving; there is no guarantee of the

ultimate result.”). This case is no exception to that rule. It involves 15,293 class members, complicated and technical facts, and a well-funded and motivated Defendant.

There are numerous substantial hurdles Plaintiff would have to overcome before the Court might find a trial appropriate. Data breach cases, in particular, face substantial hurdles in surviving past the pleading stage and are among the riskiest and most uncertain types of litigation. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Here, Defendant disputes Plaintiff’s allegations and denies that it is liable for any harm caused to Plaintiff from the Data Incident and has indicated it will vigorously defend the case. While Plaintiff has arguments and authorities that can support her allegations, the number of issues in this case, which centers on a developing area of law—data breach litigation—nonetheless creates significant uncertainty in this case. Even if Plaintiff were to prevail, there exists a substantial degree of uncertainty on subsequent appeals, again due to the developing nature of this area of law. Thus, despite Plaintiff’s confidence in the strength of this case, numerous legal issues and factual disputes exist that undermine the likelihood of a more favorable outcome for the Settlement Class.

Indeed, there are inherent risks associated with taking any data breach class action to trial, including pre-trial risks of obtaining and maintaining class certification and defeating summary judgment. To emphasize this point, the Court need only look at two very high profile data breach cases, including one from this judicial district: *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR (M.D. Fla.) and *In re Marriott Int’l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879 (D. Md.). In both cases, plaintiffs were forced to re-litigate standing; partially lost *Daubert* motions to exclude some of their expert damages models supporting the motions; had the courts

narrow the class definitions in order to grant any certification of a class; had the courts reject class certification of some of the claims and classes; and faced numerous, very serious issues on damages calculations, predominance, and causation. *See Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *13 (M.D. Fla. Apr. 14, 2021) (noting that "if it becomes obvious at any time that the calculation of damages (including accounting for multiple data breaches) will be overly burdensome or individualized, the Court has the option to decertify the class"), vacated in part and remanded *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023), *Theus v. Brinker Int'l, Inc.*, No. 3:18-CV-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (denying class certification on negligence claim on remand); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879, 2022 WL 1396522, at *24 (D. Md. May 3, 2022) (approving only the overpayment damages theory where the information necessary to calculate damages is "objective and administrative in nature" and holding if the individual inquiries metastasize to an impermissible level, the court could modify the order, create subclasses, bifurcate liability and damages or decertify the class). Moreover, even if the class was certified, there is always the risk or possibility of decertification. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023) (decertifying classes and remanding), *In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023) (recertifying class on remand); *Maldini v. Marriott Int'l, Inc.*, No. 24-1064, 2025 WL 1560372, at *1 (4th Cir. June 3, 2025) (reversing certification a second time).

The Settlement allows for Settlement Class Members to obtain benefits now—as opposed to potentially waiting for years for discovery, trial, and appeals—and eliminates the possibility of receiving no benefits. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. Mar. 20, 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would

be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."). Resolution in the near-term also helps mitigate any past, current, and future harm to Settlement Class Members by providing access to credit monitoring benefits in the near-term, rather than after prolonged litigation.

Continued litigation would also likely involve costly discovery involving experts regarding damages, motions for summary judgment, a motion for class certification, and one or more interlocutory appeals, all of which would delay final resolution. Litigating this case to a favorable conclusion will require a considerable amount of time and resources and weighs in favor of accepting the Settlement now. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. Aug. 11, 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (internal citation omitted).

Here, the relief provided for in the Settlement represents a significant and excellent result for the Settlement Class, establishing an all-cash non-reversionary Settlement Fund of $675,000.00 from which Settlement Class Members are eligible to make a claim for: (1) reimbursement of documented losses up to $10,000; (2) reimbursement for lost time of $25 per hour for up to four hours (undocumented), and an additional $25 per hour for up to 11 hours (documented); (3) a *pro rata* alternative cash payment in lieu of documented losses and lost time; and (4) three years of three-bureau credit monitoring with up to $1,000,000 in identity theft insurance.

Based upon all this relief, this is a sizeable recovery for the Settlement Class and represents

real, meaningful benefits for Settlement Class Members.[3] The Settlement provides benefits that address all potential harms of a data breach without the substantial risks, uncertainties, and duration and expense of continued litigation. Accordingly, the Settlement easily weighs in favor of final approval.

b. *The Solvency of Urban One on a Litigated Judgment is Neutral and Does Not Preclude Final Approval*

There is no evidence that Defendant is in danger of becoming insolvent during the presumed duration of this litigation or as the result of a reasonable jury award should Plaintiff prevail. Thus, this factor is neutral in the analysis and does not preclude the Court from granting final approval. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 573 (E.D. Va. 2016) (noting irrelevance of solvency when other factors weigh in favor of approval).

c. *The Degree of Opposition to the Proposed Settlement.*

The reaction of the Settlement Class to the proposed Settlement has been overwhelmingly positive. Indeed, as of September 9, 2026, out of the 15,293 Settlement Class Members who received notice, no Class Members requested timely exclusion and no Class Members objected to the Settlement. Admin Decl. ¶¶ 20, 22. The lack of objections and opt-outs support the conclusion that the Settlement satisfies the adequacy requirement. *See e.g.*, *Skochin*, 2020 WL 6697418 at *4 (granting final approval where there were 191 exclusions and 32 objections out of class of 207,000). "'It is well established that the absence of a large number of objections to a proposed

[3] These Settlement terms here offer benefits that exceed those offered in other agreements approved by Courts in similar data breach cases. *See, e.g.*, *Kesner, et al. v. UMASS Memorial Health Care, Inc.*, No. 2185-cv-01210 (Mass. Supp. Ct.) (approving $1.25 million settlement for 209,047 class members for a per class member recovery of $5.74); *Bingaman, et al. v. Avem Health Partners Inc.,* Case No. CIV23-130-SLP (W.D. Ok.) (approving $1.45 million settlement for 271,303 class members for a per-class member recovery of $5.34); *Madkin v. Automation Personnel Servs., Inc.*, No. 2:21-cv-1177 (N.D. Ala.) (approving $1.37 million settlement for 299,253 class members for a class member recovery of $4.59). This is an important factor in the fairness analysis. *See Boger*, 2023 WL 3763974, at *11 (court observing expected payment exceeds settlements in other similar cases).

class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.'" *West v. Cont'l Auto., Inc.*, No. 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *6 (W.D. N.C. Feb. 5, 2018)) (quoting *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. Jan. 5, 2004) (collecting cases)). As of September 9, 2026, 867 claims have bene filed. Given that the claims deadline is October 12, 2026, the number of claims already submitted reflects a highly positive response from the Settlement Class. Thus, the presumption in favor of final approval applies here.

2. The Settlement Terms Meet the *Jiffy Lube* Fairness Requirement.

The Fourth Circuit has listed four factors that a court should consider in concluding whether a proposed settlement agreement is fair, and reached in good faith without collusion: (1) the posture of the case at the time it settled; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the relevant experience of counsel. *S.C. Nat'l Bank*, 139 F.R.D. at 339, citing *In re Jiffy Lube*, 927 F.2d 155 at 158-59.

"A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations." *Harris v. McCrackin*, No. 2:03-3845-23, 2006 WL 1897038, at *5 (D.S.C. July 10, 2006); *see also ADESSO Homeowners' Ass'n v. Holder Props., Inc.*, No. 3:16-cv-710-JFA, 2017 WL 11272589, at *8 (D.S.C. May 23, 2017) ("[A] proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations."). This presumption applies here.

This Settlement is the result of protracted and intense arm's-length negotiations that took place between highly experienced attorneys familiar with class action litigation—and data breach class actions, in particular—and the legal and factual issues in these cases. Dkt. No. 21 ("MPA

Decl.") ¶¶ 9-10, 12-23. Before discussing potential settlement, Plaintiff's counsel conducted extensive discovery into the Data Incident and drafted a detailed Complaint, after researching case law and the Parties' respective positions, the Parties completed an extensive investigation and exchanged informal discovery—both of which helped them fully understand the strengths and weaknesses of their claims and defenses and the risks of continued litigation. *Id*. ¶¶ 3, 5. While the negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the positions of their respective clients. *Id.* ¶ 8. Indeed, as part of their negotiations, the parties participated in a full day mediation of this matter with Hon. Dennis J. Burke (Ret.) of ADR Systems. *Id.* ¶ 7. The final Settlement Agreement is the result of prolonged and serious arms' length negotiations between counsel for the Parties. Lastly, the relevant experience of Plaintiff's counsel should not be overlooked here, as they have collectively litigated hundreds of data breach class actions that have been granted final approval nationwide. *Id.* ¶¶ 12-23. This Settlement is the product of the counsel's collective knowledge and unique experience litigating data breach class actions.

Accordingly, the Settlement satisfies the *Jiffy Lube* test for fairness and adequacy, and the Court should grant final approval of this Settlement.

## V. CONCLUSION

Plaintiff and Class Counsel respectfully request this Court enter an Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiff as Class Representative; (4) confirming the appointments of Brittany Resch as Class Counsel; (5) confirming the appointment of Simpluris as Settlement Administrator; (6) approving payment of the Settlement Administration Costs; (8) overruling timely objections, if any;

(9) granting Plaintiff's application for Fee Award and Costs, and Service Awards, Dkt. 30; and (10) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

Dated: September 11, 2026

Respectfully submitted,

By: *<u>/s/ Brittany Resch</u>*
Brittany Resch (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
bresch@straussborrelli.com

Duane O. King
**THE LAW OFFICE OF DUANE O. KING, PC**
803 W. Broad St. Suite 210
Falls Church, VA 22046
Telephone: (202) 331-1963
Facsimile: (202) 449-8365
dking@dkinglaw.com

*Attorney for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Brittany Resch, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 11th day of September, 2026.

STRAUSS BORRELLI PLLC

By: */s/ Brittany Resch*

Brittany Resch
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
bresch@straussborrelli.com